## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-------------------------------------------------------X
ANNE DAUER,                         :
                                    :
       Plaintiff,                   :          CASE NO. 3:20-cv-00831(VLB)
                                    :
       vs.                          :
                                    :
VINEYARD VINES, LLC, et al.,        :          ANSWER,
                                    :          SEPARATE DEFENSES
                                    :          AND COUNTERCLAIMS
       Defendants.                  :
                                    :
-------------------------------------------------------X
```

## PRELIMINARY STATEMENT

Defendants preface their responses to the corresponding numbered paragraphs of Plaintiff Anne Danielsen Dauer ("Anne Danielsen Dauer" or "Danielsen Dauer") Complaint, as follows:

Anne Danielsen Dauer's claims have no legal merit; rather, they were brought solely to attempt to wrongfully extract an unreasonably high severance payment from vineyard vines that substantially exceeded that generously offered to her upon her involuntary termination and later prior to this litigation. Anne Danielsen Dauer will fail in this endeavor, however, because Defendants are not liable to her for anything. Every relevant, material decision made by any Defendant(s) with respect to Anne Danielsen Dauer was based on a legitimate, non-discriminatory reason, including primarily that her performance as measured by business results, employee comments, and executive observations was properly assessed as abysmal. Despite Danielsen Dauer's poor performance

1

over the past few years, vineyard vines gave her significant time and opportunity to improve.  She chose not to do so, instead often continuing to delegate material responsibilities to others, or ignoring the responsibilities all together.  Objective financial data alone demonstrates Danielsen Dauer's failure – the financial performance of the company's retail division was down for multiple consecutive years.  The material problems with her performance became increasingly clear starting in approximately 2017 and never improved. Anne Danielsen Dauer abused her power, position, and people at vineyard vines, maintaining and fostering an intentionally siloed retail organization and instilling a culture and atmosphere of blame, deflection, and division, demonstrating starkly ineffective leadership, communication and collaboration.  She was unresponsive to colleagues on numerous occasions, failed to show up at important meetings that she was scheduled to attend; treated select individuals poorly and favored others for illegitimate reasons, e.g., ignoring a colleague who accepted a promotion outside of Danielsen Dauer's direct control. Danielsen Dauer ignored suggestions, counseling, and even mandates from the President to whom she reported, e.g., on reducing payroll in over-staffed stores, and broadening the scope of candidates for positions to include outside, experienced candidates. Danielsen Dauer failed to champion and advocate for innovation and change, including that which vineyard vines had invested in for the business: technology tools designed to improve operations, financials, sales, and the customer experience.  Anne Danielsen Dauer consistently blamed others for her failures rather than taking any accountability for the declining business.

By 2018 when many of these issues were already apparent and not improving, and after careful consideration and planning, the President in conjunction with Human Resources made the decision to terminate Anne Danielsen Dauer's employment.  The individual defendants, however, did not permit the termination; they saved Danielsen Dauer's job out of loyalty to her for several years at the company and asked that her performance continue to be observed and that the President consider whether Danielsen Dauer's endless excuses were the reason for her failure.  They ultimately deferred to the President and Human Resources who, with skepticism, agreed to provide some additional time and to counsel and discuss with her ways she could improve, e.g., improved communication and collaboration with her key cross functional partners, all to no avail.  She failed to improve, or become more engaged or on board with initiatives, ideas, and innovation.  Rather, among other performance failures, Danielsen Dauer continued to foster her culture of blame and division, even essentially ignoring the brand new director of retail, a new employee who reported to her and was in charge of nearly one third of the country's vineyard vines stores.  And, because of her failure to take steps to adequately ensure that security and loss prevention measures were in place in multiple stores, a "bulk purchasing scheme" occurred which caused material financial losses, management and staff turnover, and significant disruption in multiple vineyard vines locations.  When the President and Human Resources saw no material improvement in Danielsen Dauer's performance in any respect, and in fact a continuing decline of engagement, coupled with the bulk purchasing scheme,

retaliation against employees, disengagement, blame, lack of collaboration, ignoring of employees, and multiple other destructive behaviors that had occurred for years, they – and not the individual defendants – decided to terminate Danielsen Dauer's employment and focused on providing her with a smooth transition to another job, by, among other things, offering outplacement services, severance and benefits. Danielsen Dauer rejected all of vineyard vines' offers, including immediately prior to Danielsen Dauer filing suit.

### ANSWER TO CORRESPONDING PARAGRAPH NUMBERS IN THE COMPLAINT, AND SEPARATE DEFENSES

1.     Defendants adamantly deny all of Plaintiff Anne Danielsen Dauer's allegations claiming job discrimination, including equal pay, and every other alleged violation of any statute, rule, or regulation cited in the Complaint or under which Anne Danielsen Dauer purports to bring this action, including those identified in Paragraph 1 of the Complaint.

2.     Defendants admit vineyard vines is a privately-owned company offering, among other things, clothing and accessories for women, men, and children. Defendants admit that the individual defendants co-founded the Company in 1998. The remaining allegations of Paragraph 2 are denied as stated.

3.     Defendants admit that Anne Danielsen Dauer was Senior Vice President of Retail for vineyard vines from 2015 until her termination in March 2020. Defendants further admit that Anne Danielsen Dauer was 57 years old at the time her employment was terminated. Defendants lack knowledge or information sufficient to admit or deny whether Anne Danielsen Dauer currently suffers from a medical condition and when such a condition was diagnosed.

4

Defendants deny that Anne Danielsen Dauer was "abruptly fired following a short leave of absence for a heart procedure" or that her position has been filled or that she was replaced. Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint.

4.     Defendants adamantly deny all of the allegations of Paragraph 4. Vineyard vines expressly prohibits discrimination of any kind and has a senior leadership team where the vast majority fall within the age protected category (as do the individual Defendants), and approximately half are women.

5.     Denied.

6.     Denied.

7.     Defendants admit that Anne Danielsen Dauer was employed by vineyard vines for approximately 13 years, that Anne Danielsen Dauer requested and was granted several paid days off in January 2020 for a medical procedure, and that her employment was terminated on March 15, 2020. Defendants further admit that vineyard vines notified Anne Danielsen Dauer of the termination of her employment in February 2020. Defendants deny that Anne Danielsen Dauer oversaw "remarkable growth" in the last several years of her employment. Defendants further deny the existence of an ageist or sexist culture at vineyard vines. Defendants further respond that Anne Danielsen Dauer's alleged medical issue and paid time off played no role in the decision to terminate her employment. In fact, vineyard vines made the decision to terminate Anne Danielsen Dauer's employment *before* she informed the Company that she needed a few days off in January 2020, purportedly for a medical procedure.

8.      **Admitted.**

9.      **Admitted.**

10.     **Admitted.**

11.     **Admitted.**

12.     **Paragraph 12 contains conclusions of law to which no response is required.**

13.     **Paragraph 13 contains conclusions of law to which no response is required.**

14.     **Paragraph 14 contains conclusions of law to which no response is required.**

15.     **Paragraph 15 contains conclusions of law to which no response is required.**

16.     **Defendants lack knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.**

17.     **Defendants admit upon information and belief that Anne Danielsen Dauer worked for Ann Taylor and the Gap prior to joining vineyard vines.  Defendants admit that vineyard vines hired Anne Danielsen Dauer as Vice President Retail in 2009 and promoted her to Senior Vice President Retail in 2015.  Defendants deny the remaining allegations of Paragraph 17.**

18.     **Defendants admit that Anne Danielsen Dauer was responsible for leading the company's retail sales strategy.  Defendants deny that Anne Danielsen Dauer took the initiative to lead "the charge for the rapid growth in [the] company's retail stores" in the last few years of her employment, but do**

**admit she should have done so in the leadership role Defendants gave her. Defendants deny the remaining allegations of Paragraph 18.**

19. **Defendants admit that they granted Anne Danielsen Dauer several days of paid time off in January 2020 purportedly to have a medical procedure. Defendants further admit that Anne Danielsen Dauer was notified that her employment would be terminated in February 2020, and her termination occurred in March 2020.**

20. **Defendants admit that Anne Danielsen Dauer called out sick on September 23, 2019 and was out of work for approximately two weeks. She returned to work without restrictions. Defendants further admit that Anne Danielsen Dauer requested and was granted several days of paid time off in January 2020 purportedly for a medical procedure. Defendants deny the remaining allegations of Paragraph 20.**

21. **Denied.**

22. **Denied.**

23. **Denied.**

24. **Denied.**

(a) **Defendants admit that Anne Danielsen Dauer was 57 years of age at the time her employment was terminated, and deny the remaining allegations of Paragraph 24(a).**

(b) **Denied.**

(c) **Denied.**

(d) **Denied.**

(e) **Denied.**

(f)    **Denied.**

(g)    **Denied.**

25.    **Defendants admit that vineyard vines does desire sales associates who reflect and can best relate to the brand's target customers and audiences. Defendants deny the remaining allegations of Paragraph 25. Of vineyard vines' current retail management population, approximately 65% are female and approximately 33% are over 40 years of age.**

26.    **Denied.**

27.    **Denied.**

28.    **Denied. The Company had no position comparable or equal to Anne Danielsen Dauer's, and none of Anne Danielsen Dauer's reports or anyone else in Retail earned more than she did.**

29.    **Denied. No one comparable to Anne Danielsen Dauer earned more in bonus compensation than Anne Danielsen Dauer. Anne Danielsen Dauer was part of the LTIP program and no one comparable to Anne Danielsen Dauer was permitted to participate in the LTIP program when she was not.**

30.    **Defendants admit that one of two Regional Directors voluntarily resigned from vineyard vines in September 2019. Anne Danielsen Dauer was the hiring manager for that position. Anne Danielsen Dauer hired a Regional Director to fill that open role. Anne Danielsen Dauer partnered with Human Resources and approved the newly hired Regional Director's compensation package, which was based on market trends at that time. Defendants deny the remaining allegations of Paragraph 30.**

31.     Defendants admit that the newly-hired Regional Director was eligible to participate in the LTIP program.  At the time of the new Regional Director's hire, the other Regional Director was also permitted to participate in the LTIP program, just as the prior Regional Director who resigned would have been.

32.     Defendants repeat and restate their responses to Paragraphs 1 through 31 as if set forth fully herein.

33.     **Admitted.**

34.     **Denied.**

35.     **Denied.**

36.     **Denied.**

37.     **Denied.**

38.     **Denied.**

39.     **Denied.**

40.     Defendants repeat and restate their responses to Paragraphs 1 through 39 as if set forth fully herein.

41.     **Admitted.**

42.     **Denied.**

43.     **Denied.**

44.     **Denied.**

45.     **Denied.**

46.     **Denied.**

47.     Defendants repeat and restate their responses to Paragraphs 1 through 46 as if set forth fully herein.

48.     **Admitted.**

49.     **Denied.**

50.     **Admitted.**

51.     **Denied.**

52.     **Denied.**

53.     **Denied.**

54.     **Denied.**

55.     **Denied.**

56.     **Defendants repeat and restate their responses to Paragraphs 1 through 55 as if set forth fully herein.**

57.     **Admitted.**

58.     **Denied.**

59.     **Denied.**

60.     **Denied.**

61.     **Denied.**

62.     **Denied.**

63.     **Denied.**

64.     **Denied.**

65.     **Defendants repeat and restate their responses to Paragraphs 1 through 64 as if set forth fully herein.**

66.     **Admitted.**

67.     **Denied.**

68.     **Denied.**

69.    **Denied.**

70.    **Denied.**

71.    **Denied.**

72.    **Denied.**

73.    **Defendants repeat and restate their responses to Paragraphs 1 through 72 as if set forth fully herein.**

74.    **Admitted.**

75.    **Denied.**

76.    **Denied.**

77.    **Denied.**

78.    **Denied.**

79.    **Denied.**

80.    **Defendants repeat and restate their responses to Paragraphs 1 through 79 as if set forth fully herein.**

81.    **Paragraph 81 contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 81 are denied.**

82.    **Denied.**

83.    **Denied.**

84.    **Denied.**

85.    **Denied.**

86.    **Denied.**

87.    **Denied.**

88.     **Defendants repeat and restate their responses to Paragraphs 1 through 87 as if set forth fully herein.**

89.     **Paragraph 89 contains conclusions of law to which no response is required.  To the extent a response is required, the allegations of Paragraph 89 are denied.**

90.     **Denied.**

91.     **Denied.**

92.     **Denied.**

93.     **Denied.**

94.     **Denied.**

95.     **Denied.**

96.     **Defendants repeat and restate their responses to Paragraphs 1 through 95 as if set forth fully herein.**

97.     **Admitted.**

98.     **Denied.**

99.     **Denied.**

100.    **Denied.**

101.    **Denied.**

## PRAYER FOR RELIEF

**To the extent the unnumbered "WHEREFORE" clause following Paragraph 101 of the Complaint requires a response, Defendants deny that Anne Danielsen Dauer is entitled to any of the relief requested or any relief whatsoever from**

Defendants, and further deny that Defendants are the cause of any damages to Anne Danielsen Dauer.

## SEPARATE DEFENSES

### FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND DEFENSE

Anne Danielsen Dauer's claims are barred, in whole or in part, to the extent she failed to satisfy the applicable administrative exhaustion requirements, statutes of limitations, and/or filing periods.

### THIRD DEFENSE

Anne Danielsen Dauer's claims are barred, in whole or in part, by the doctrine of unclean hands, quantum meruit, unjust enrichment, or other equitable defenses.

### FOURTH DEFENSE

Defendants' actions were taken in good faith and based upon legitimate, non-discriminatory reasons.

### FIFTH DEFENSE

Defendants acted at all times in good faith and consistently maintained, implemented, and enforced a policy in the workplace against harassment and discrimination, and otherwise exercised reasonable care to prevent and correct promptly any harassment or discrimination. Anne Danielsen Dauer's claims are barred or diminished to the extent that she unreasonably failed to take advantage of preventive and corrective opportunities provided by Defendants or to avoid harm otherwise.

## SIXTH DEFENSE

In the event that Anne Danielsen Dauer should establish that her age was a motivating factor for any adverse employment action, Anne Danielsen Dauer's remedies are barred or diminished to the extent the same action(s) would have been taken in the absence of any impermissible motivating factor.

## SEVENTH DEFENSE

If any improper, illegal, harassing, or discriminatory act was taken by any of vineyard vines' employees against Anne Danielsen Dauer, it was outside the course and scope of that employee's employment, contrary to vineyard vines' policies, and/or was not ratified, confirmed, or approved by vineyard vines.

## EIGHTH DEFENSE

Anne Danielsen Dauer's damages, if any, were solely and proximately caused by Anne Danielsen Dauer's own negligent, reckless and/or intentional conduct.

## NINTH DEFENSE

Anne Danielsen Dauer's claims may be barred or diminished to the extent Anne Danielsen Dauer has failed to mitigate or minimize her damages, the existence of which are denied.

## TENTH DEFENSE

Any emotional distress suffered by Anne Danielsen Dauer (if any) was not caused by Defendants or their agents.

## ELEVENTH DEFENSE

To the extent that Anne Danielsen Dauer has received any income from other employment or other sources or from vineyard vines, such monies must be offset or set-off against any damages allegedly due to Anne Danielsen Dauer from Defendants (if any).

## TWELFTH DEFENSE

Anne Danielsen Dauer's claims for damages are barred to the extent that they exceed the amounts recoverable, if any, by applicable law.

## THIRTEENTH DEFENSE

Anne Danielsen Dauer's claims are frivolous, unreasonable, and groundless, and, accordingly, Defendants should recover all costs and attorneys' fees incurred herein.

## GENERAL DENIAL

Defendants deny each and every allegation of fact, conclusions of law, or other matters set forth in the Complaint that have not been expressly admitted in this Answer.

## RESERVATION OF RIGHTS

Defendants reserve the right to raise additional defenses as may be discovered during the course of this litigation.

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint with prejudice and enter judgment in Defendants' favor, together with the costs of this action, including reasonable attorneys' fees.

## VINEYARD VINES' COUNTERCLAIMS AGAINST ANNE DANIELSEN DAUER

Defendant vineyard vines hereby asserts the following Counterclaims against Anne Danielsen Dauer, seeking damages and other relief, and allege as follows:

## PARTIES

1.     Vineyard vines is a Limited Liability Company organized under Connecticut law.  Vineyard vines' principal place of business is in Stamford, Connecticut.

2.     Anne Danielsen Dauer is a former employee of vineyard vines and a resident of Connecticut.

## JURISDICTION AND VENUE

3.     This Court has supplemental jurisdiction over the Counterclaims under 28 U.S.C. § 1367(a) because the Counterclaims form part of the same case or controversy as the claims within the Court's original jurisdiction.

4.     Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 1391 because Defendant resides in this judicial district and a substantial part of the alleged events or omissions giving rise to Defendants' Counterclaims occurred in this judicial district.

## FACTUAL ALLEGATIONS

5.     Anne Danielsen Dauer executed the Non-Competition and Confidentiality Agreement ("Agreement") attached hereto as Exhibit A, in consideration for her participation in the Company's long-term incentive plan ("Performance Achievement Plan").

6.      The Agreement provides, in relevant part, as follows:

        **Confidentiality**. **I agree that I will not, during the period of my employment with, or engagement by, the Company and at any time thereafter directly or indirectly use, publish, misappropriate, or disclose to any unauthorized person, firm, or corporation, any information concerning Confidential Information of the Company, except as required in the performance of my duties for the Company (provided it is lawful and consistent with this Agreement) or as expressly authorized in writing by the Company.  (Exhibit A at Paragraph 3.)**

7.      "Confidential Information" is defined in the Agreement as follows:

        **"Confidential Information" means information of any nature and in any form which at the time concerned is not generally and lawfully known to those persons engaged in business similar to that conducted or contemplated by the Company, including but not limited to information regarding the past, present or future business activities of the Company such as customer lists or information relating to customers, customer or supplier identification, products or design concepts that include methods, processes, techniques, computer software, equipment, research data, marketing and sales strategies, business plans and strategies, pricing and related information, personnel data, financial data (including product costs, sales levels, pricing, profit levels, financial models and projections, and other unpublished financial data), employment agreements, other personnel information such as personnel records and key talent information, labor rates, technological data, information relating to vendor relationships, regulatory information or communications with governmental agencies, information concerning actual or anticipated relationships between the Company and third-parties, plans and all other know-how and Trade Secrets of the Company, its subsidiaries or affiliates. (Exhibit A at Paragraph 2(b).)**

8.      **Vineyard vines fully performed its obligations under the Agreement,**

**permitting Anne Danielsen Dauer to fully participate in the Company's**

**Performance Achievement Plan.**

9.       Despite her promise not to "directly or indirectly use, publish, misappropriate, or disclose to any unauthorized person, firm, or corporation, any information concerning Confidential Information of the Company," Anne Danielsen Dauer has blatantly violated this promise by disclosing highly sensitive non-public financial and other information belonging to the Company.

10.      The information Anne Danielsen Dauer publicly disclosed is "not generally and lawfully known to those persons engaged in business similar to that conducted or contemplated by the Company," and therefore falls within the definition of "Confidential Information" set forth in the Agreement.

11.      Following Anne Danielsen Dauer's termination, vineyard vines offered to assist her in a smooth transition out of the Company.  During discussions concerning her transition, vineyard vines continued to pay Anne Danielsen Dauer her salary, with the expectation that the parties would come to an agreement on a mutually agreeable transition plan and that this would serve as consideration.

12.      Anne Danielsen Dauer refused the severance amount, including preceding this suit, and failed return the monies vineyard vines paid to her.

13.      Anne Danielsen Dauer refers to two "medical leaves" in her Complaint.  However, she never requested or documented any medical leaves of absence.

14.      Anne Danielsen Dauer was aware of vineyard vines' policy requiring employees to record time off in the company's payroll system.

15.     Anne Danielsen Dauer took excessive amounts of paid time off ("PTO") and failed to record that time in vineyard vines' payroll system.

16.     Upon her termination, vineyard vines paid Anne Danielsen Dauer for her accrued but unused PTO, based on its payroll records.

17.     Because Anne Danielsen Dauer did not accurately record her use of PTO, vineyard vines paid her for thousands of dollars for PTO she had actually used, and for which she had already been paid.

## COUNT I

### BREACH OF CONTRACT

18.     Defendant, vineyard vines incorporates by reference its Preliminary statement and Paragraphs 1-17 of its counterclaims.

19.     The Agreement is a valid contract between vineyard vines and Anne Danielsen Dauer.

20.     By disclosing Confidential Information, Anne Danielsen Dauer breached the Agreement.

21.     Vineyard vines suffered damages as a result of Anne Danielsen Dauer's breach.

## COUNT II

### UNJUST ENRICHMENT

22.      Defendant, vineyard vines incorporates by reference its Preliminary statement and Paragraphs 1-17 of its counterclaims.

23.     Vineyard vines permitted Anne Danielsen Dauer to take PTO as needed during her tenure.

24.     Anne Danielsen Dauer was aware that company policy required employees to accurately record all PTO hours used. Anne Danielsen Dauer failed to do so.

25.     Anne Danielsen Dauer was paid thousands of dollars upon her termination, for PTO hours appearing to have been accrued but unused, based on vineyard vines' payroll records.

26.     Anne Danielsen Dauer had already used numerous PTO days (without recording their use.  Anne Danielson was paid thousands of dollars more than she was entitled to because she failed to properly record all PTO time she used prior to her termination

27.     In addition, vineyard vines continued to pay Anne Danielsen Dauer her salary following her termination, in anticipation that the Company's efforts to provide her with a mutually agreeable transition package would result in an amicable parting of ways.

28.     Anne Danielsen Dauer accepted tens of thousands of dollars in post-termination salary payments and did not repay those amounts even when it became clear that she would not work in good faith to reach an amicable transition agreement.

29.     Vineyard vines suffered damages as a result of Anne Danielsen Dauer's conduct described in the foregoing Paragraphs 11-17 and 23-28.

## PRAYER FOR RELIEF

**WHEREFORE**, vineyard vines prays for judgment against Anne Danielsen Dauer on its Counterclaims and for recovery as follows:

A.      Monetary damages;

B.      Restitution;

C.      Attorneys' fees and costs;

D.      An injunction prohibiting Anne Danielson from further breach of the Agreement;

E.      Punitive damages, including as provided for in the Agreement; and

F.      For such other and further relief as the Court may deem just and proper.

Dated this 21st day of August, 2020.          Respectfully submitted,

*/s/ Kimberley E. Lunetta*
Paula N. Anthony (ct08972)
Berchem Moses PC
75 Broad Street
Milford, CT 06460
Tel: 203-783-1200
Fax: 203-877-8422
panthony@berchemmoses.com

Kimberley E. Lunetta, admitted *pro hac vice*
Morgan Lewis & Bockius, LLP
101 Park Ave.
New York, NY 10178
Tel. 212-309-6656
kimberley.lunetta@morganlewis.com

*Counsel for all Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2020 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Kimberley E. Lunetta
Kimberley E. Lunetta, Esq.

DB1/ 115656301.1