# EXHIBIT A



# Non-Competition/Confidentiality Agreement

This Non-Competition and Confidentiality Agreement ("Agreement") is entered into as of your date of hire by vineyard vines® LLC and all past, present and future affiliates (the "Company") and you (the "Employee").

1. <u>Intention</u>. As a team member of the Company, I understand that its business involves the discovery, design, and sale of products that require a substantial investment in capital as well as substantial time, effort, and input by the Company's team members. I further understand that, in the course of my employment or consulting engagement, I will be exposed to proprietary information of the Company and I may create designs or develop business relationships and programs, which could be of great value not only to the Company but also to competitors of the Company.

   In recognition of these circumstances, and to induce the Company to promote, employ or engage to the position, I agree that restrictions upon the use and disclosure of the Company's proprietary, confidential and business information by me, and the other agreements and restrictions set forth herein are reasonable, proper, and do not impose a greater restraint than necessary to protect the Company's legitimate protectable business interests. I acknowledge and agree that my voluntary participation in the Company's Performance Achievement Plan is conditioned on my execution of this Agreement and is valid and sufficient consideration for the agreements on my part set forth herein. This Agreement is not intended to change the employment or consulting relationship between the Company and me from one of employment or consultant at will.

   The non-competition provision at paragraph 7 of this Agreement pertaining to the entities listed in <u>Schedule A</u> hereto or any of their affiliates is enforceable at the discretion of the Company. Should the Company involuntarily terminate your employment and also elect to enforce that paragraph 7 of this Agreement, it agrees to provide you with a minimum of six (6) months of your salary paid monthly (at your monthly salary rate at the time of your termination) as additional compensation. Should your employment instead terminate by your resignation, you will be obligated during the following six (6) months to advise the Company if you agree to begin or plan to begin or otherwise accept a contractual or employment relationship or other

relationship to provide services, directly or indirectly, in any capacity to an entity listed on Schedule A hereto or any of their affiliates. In that event, the Company shall again have the discretion to enforce the non-competition provision of this Agreement pertaining to the entities listed in Schedule A hereto or their affiliates. If the Company does elect to enforce this Agreement, it agrees to provide you with a salary paid monthly (at your monthly salary rate at the time of your termination) as additional compensation during the remainder of the 6-month period. All monthly payments are forfeited during the time of any conduct in violation of this Agreement.

Accordingly, I agree with the Company as follows:

2. Definitions. As used herein, the following terms shall have the meaning set forth below:

   a. "Trade Secrets" means information of the Company, including but not limited to, customer lists, customer goodwill, programs, designs, devices, methods, databases, know-how, formulae, compositions, techniques or processes, that have economic value and are subject to the Company's reasonable efforts, under the circumstances, to maintain its secrecy. Likewise, any clothing and accessory designs or other creations whatsoever (including, but not limited to, any which may be created for the Company by me) shall be considered trade secrets which remain the property of the Company and may not be disclosed to or discussed with outsiders. Notwithstanding the foregoing, Trade Secrets does not include information that is lawfully in the public domain or is part of the customary knowledge and skills of my trade or profession.

   b. "Confidential Information" means information of any nature and in any form which at the time concerned is not generally and lawfully known to those persons engaged in business similar to that conducted or contemplated by the Company, including but not limited to information regarding the past, present or future business activities of the Company such as customer lists or information relating to customers, customer or supplier identification, products or design concepts that include methods, processes, techniques, computer software, equipment, research data, marketing and sales strategies, business plans and strategies, pricing and related information, personnel data, financial data (including product costs, sales levels, pricing, profit levels, financial models and projections, and other unpublished financial data), employment agreements, other personnel information such as personnel records and key talent information, labor rates, technological data, information relating to vendor relationships, regulatory information or communications with governmental agencies, information concerning actual or anticipated relationships between the Company and third-parties, plans and all other know-how and Trade Secrets of the Company, its subsidiaries or affiliates. Failure by the Company to mark any of the Confidential Information as confidential or proprietary shall not affect its status as Confidential Information under this Agreement. Notwithstanding the foregoing,

2

Confidential Information does not include information which has been lawfully published or disclosed to the general public, which is lawfully in the public domain, or is part of the customary knowledge and skills of my trade or profession.

    c. "Competitive Business Activity" means the business of any entity listed on Schedule A hereto or any of their affiliates, which Schedule A may be amended by the Company at its discretion with notice to you (including notice after the end of your employment with the Company) as the industry evolves, provided that any entities added to Schedule A by amendment are those engaged in, in whole or in part, the design, development, marketing or sale of any product that is similar to or is used for the same purpose as, and/or in competition with, any of the Company's planned or existing products.

3. Confidentiality. I agree that I will not, during the period of my employment with, or engagement by, the Company and at any time thereafter directly or indirectly use, publish, misappropriate, or disclose to any unauthorized person, firm, or corporation, any information concerning Confidential Information of the Company, except as required in the performance of my duties for the Company (provided it is lawful and consistent with this Agreement) or as expressly authorized in writing by the Company.

I understand and agree that Confidential Information, however or whenever produced, shall be the Company's exclusive property, and shall not be removed by me (or anyone acting at my direction or on my behalf) from the Company's property without the Company's prior written consent. Upon the termination of my employment, or engagement, I will promptly deliver to the Company all copies and electronic versions of all documents, equipment, property or materials of any type (including but not limited to those contained on any personal digital assistants, flash drives, home computers, e-mail accounts, backup drives, and social media accounts) in my possession, custody or control, that belong to the Company, and/or that contain, in whole or in part, any Confidential Information.

4. Inventions Retained and Licensed. I have attached hereto, as Schedule B, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company, which belong to me, which relate to the Company's business, products or research and development, and which are not assigned to the Company hereunder (collectively referred to as "Prior Inventions"); or, if no such list is attached, I represent that there are no such Prior Inventions. If, in the course of my employment with the Company, I incorporate into a Company product, process or machine a Prior Invention owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use, offer for sale and sell such Prior Invention as part of or in connection with such product, process or machine. During the course of my employment, I shall

3

not use, disclose or incorporate into a Company product, process or machine any confidential information or trade secret owned by a third party including any of the my former employers.

5. Rights to Inventions. I agree that any inventions discovered during employment or engagement and 12 months thereafter belong to the Company. I agree to disclose promptly to the Company in writing all ideas, designs, development, discoveries and improvements, whether patentable or not, which shall have been made or conceived by me, whether by myself or with others, within the period of my employment or engagement and 12 months thereafter, which relate to or arise out of any work being performed by me or others for or on behalf of the Company, or which may otherwise pertain to the business of the Company, to assign and hereby do assign, said ideas, designs, developments, discoveries and improvements and all copyrights, patents, trademarks or other intellectual property rights relating thereto to the Company at any time on demand, and to execute and deliver at any time on demand any and all papers and do any and all acts which the Company may consider necessary to secure all rights to said ideas, designs, developments, discoveries and improvements and all copyrights, patents, trademarks or other intellectual property rights relating thereto and to enforce the same, in the United States and in all other countries of the world.

6. Non-Solicitation. I agree that during my employment or engagement and for a period of twelve (12) months after my employment or engagement with the Company terminates for any reason, whether voluntary, with or without cause, I will not directly or indirectly, on my own behalf or on behalf of a third person or entity, whether through my own efforts or through the efforts of employing the assistance of any other person or entity (including without limitation any consultant or any person employed by or associated with any entity with whom I am employed or associated):

   a. solicit, interfere with, divert, or accept any business from any (i) clients/customers of the Company who were clients/customers at the time of such termination of employment or engagement, or (ii) any prospective clients/customers of the Company who, within two (2) years prior to such termination of employment or engagement, had been solicited directly by me or where, directly or indirectly in whole or in part, I supervised or participated in the Company's solicitation activities related to such prospective clients/customers; or

   b. hire, employ, contract with or otherwise become associated with any team member or consultant of the Company, or solicit or induce, directly or indirectly, any such team member or consultant to terminate his or her employment or any other relationship with the Company.

7. Non-Competition. I agree that from the date that I sign this Agreement through the date that is 6 months after the termination of my employment or engagement with the Company for any reason, whether voluntary, with or without cause, I will not directly or

4

indirectly, on my own behalf or on behalf of a third person or entity, whether through my own efforts or through the efforts of employing the assistance of any other person or entity (including without limitation any consultant or any person employed by or associated with any entity with whom I am employed or associated):

- a. become employed by, contract with, perform work or services for, or otherwise become associated with (as an employee, officer, director, principal, manager, partner, co-partner, team member, agent, independent contractor, consultant, or any other individual representative role) any business entity which is engaged in whole or in part in any Competitive Business Activity. Provided however, that any passive investment I may make in an entity engaged in a Competitive Business Activity shall not be considered to give rise to a violation of this covenant if:

    (i) the stock of such business is publicly traded,

    (ii) my equity interest in such business does not exceed five percent (5%) of the aggregate outstanding equity interests of such business, and

    (iii) I do not otherwise participate in the management or operational affairs of such business.

- b. The restrictions on competition set forth in this paragraph 7 shall not be construed to waive or limit my obligations not to use or disclose Trade Secrets and Confidential Information or any of my other obligations under this Agreement.

8. <u>Validity</u>. I understand and agree that, by virtue of my position within the Company or association as a consultant with the Company, I have had, and will continue to have, substantial access to and impact on the good will, Trade Secrets, Confidential Information, and other legitimate business interests of the Company, and that, therefore, I am in a position to have a substantial adverse impact on the Company's business interests should I engage in a Competitive Business Activity after my employment or engagement with the Company terminates or use or disclose Trade Secrets or Confidential Information or violate the non-solicitation obligations above. I further understand and agree that my adherence to the restrictive covenants set for in paragraphs 2, 3, 4, 5, 6 and 7 of this Agreement is an important and substantial part of the consideration the Company is receiving under this Agreement in exchange for my employment or engagement with the Company. Accordingly, I agree that the restrictive covenants in paragraphs 2, 3, 4, 5, 6 and 7 are reasonable, necessary, and enforceable in all respects and I further consent to the entry of injunctive relief to enforce such covenants.

9. <u>Specific Performance</u>. I acknowledge and agree that the Company's remedy at law for any breach or threatened breach of paragraphs 2, 3, 4, 5, 6 and 7 would be inadequate,

5

and further agree that, for a breach or threatened breach of such provisions, the Company shall be entitled, in addition to all other rights and remedies which the Company may have at law or in equity, to seek injunctive relief with any court of law or equity of competent jurisdiction (without posting a bond or other security) in order to enforce or prevent any violation of the provisions of this Agreement. I further acknowledge and agree that a breach or threatened breach of this Agreement will cause irreparable harm to the Company. Accordingly, I acknowledge and agree covenant that I will not assert in any proceeding that any given breach or further breach of the covenants contained in this Agreement: (1) will not result in irreparable harm to the Company; or (2) could be remedied adequately at law. Moreover, I acknowledge and agree that the existence of any claims or cause of action that I or any other such person may have against the Company shall not constitute a defense or bar to the enforcement of any of the covenants contained in this Agreement. If the Company must resort to litigation to enforce any of my obligations herein that has a fixed term, then such term shall be extended for the period of time of the litigation or, if later, the last day of the original fixed terms of such covenant. In the event that I breach or threaten to breach this Agreement, I agree to reimburse the Company for all attorneys' fees and costs (including expert costs) incurred in enforcing the terms of this Agreement. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available for any such breach or threatened breach, which may also include, but not be limited to, contract damages, lost profits, and punitive damages.

10. <u>Successors, Binding Agreement</u>. As used in this Agreement, the "Company" shall mean the Company as herein before defined and any successors to its business and/ or assets as aforesaid that expressly or otherwise becomes bound by the terms and provisions of this Agreement and any affiliate or subsidiary of the Company. Accordingly, I agree and acknowledge that this Agreement shall not be assigned by me but that the Agreement and specifically the restrictive covenants imposed on me in paragraphs 2, 3, 4, 5, 6 and 7 may be assigned by the Company. I further acknowledge and agree that this Agreement binds my heirs, executors, administrators, legal representatives and insures to the benefit of the Company and its successors and assigns.

11. <u>Modification, Waiver and Choice of Law</u>. This Agreement may only be modified by a writing or writings signed by myself and the Company. This Agreement may not be superseded by any other agreement between the Company and myself unless such agreement specifically and expressly states that it is intended to supersede this Agreement. No waiver of this Agreement will be effective unless it is in writing an signed by an officer of the Company. This Agreement shall be construed and enforced in accordance with the laws of the State of Connecticut, without regard to the principles of conflicts of laws of any jurisdiction. Each party hereto irrevocably consents to the exclusive jurisdiction of the state and federal courts located in the State of Connecticut in any and all actions between the parties, whether arising hereunder, or otherwise.

12. <u>Severability</u>. It is the desire and intent of the parties hereto that the provisions of this Agreement shall be enforced to the fullest extent legally permissible. Accordingly, the invalidity or unenforceability or any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provision or provisions of this Agreement, which shall remain in full force and effect. If any of the provision(s) is determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, then the court making such determination shall have the power to modify or sever such provision(s). The remainder of such provision(s) shall not thereby be affected and shall be given full effect, without regard for the invalid portion(s). Such modification(s) or deletion(s) will apply only with respect to the operation of such provision(s) in the particular jurisdiction which such adjudication is made. Additionally, it is the intention of the parties that, if any court of competent jurisdiction construes any of the covenants to be illegal, void, or unenforceable because of the scope, duration, geographical area or other factor, then the court making such determination shall have the power to reduce or limit such scope, duration, geographical area or other factor, and such provision(s) shall then be enforceable in its reduced or limited form. The remaining provisions of this Agreement shall remain in full force and effect. I also agree that the parties shall request that a court of competent jurisdiction not invalidate or ignore the terms of this Agreement, but instead honor this provision by reforming or modifying any overbroad or otherwise invalid terms to the extent necessary to render the terms valid and enforceable and then enforcing the Agreement as reformed and modified.

13. <u>Entire Agreement</u>. This Agreement constitutes the sole and exclusive agreement between the parties hereto concerning the subject matter hereof, and supersedes and replaces any prior non-competition/confidentiality or similar agreement, oral or written, entered into between the parties hereto.

14. <u>Effectiveness of Agreement</u>. This Agreement becomes effective when I sign it, the obligations under it continue throughout the entire period of time I am employed by or consulting with the Company and these obligations will continue after, and survive, the end of my employment with the Company. The executed copy of this Agreement should be returned to Human Resources, Attn: Lisa Ellis.

15. <u>Notice to Future Employers</u>. For the period of two years immediately following the end of my employment or other relationship with the Company, I will inform each new employer or entity with which I contract or otherwise agree to provide services, prior to accepting employment or any other relationship or beginning to provide services, of the existence of this Agreement and provide that employer with a copy of it. The Company has the right to inform any future employer or other person or entity with which I work of the existence of this Agreement and to provide any future employers or other persons/entities with which I work with a copy of it.

I have carefully read this Agreement. I have been given the opportunity to ask any questions regarding this Agreement and all of my questions have been answered to my satisfaction. I understand and voluntarily and knowingly accept the terms of this Agreement. I agree that I will continue to be bound by the provisions of this Agreement during my employment and after my services to the Company have ended.

Print Name: Anne Dauer Danielsen

Signature: __REDACTED__

Date: 12/23/16

Witness Signature: __REDACTED__

Witness Name: DAWN TURNER-KIRKLAND

Date: 1/9/17

Vineyard Vines, LLC

By: __REDACTED__
Name:
Title:

8

SCHEDULE A

Ralph Lauren
Lilly Pulitzer
J Crew
Brooks Brothers
Southern Tide
Bonobos
Jack Wills
Lacoste
Johnnie O
Tory Burch
J McLaughlin
Tommy Bahama
Kate Spade
Patagonia
Peter Millar